UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

QUINCY ISAIAH LUNFORD,

Plaintiff,

v.                                          CAUSE NO. 3:22-CV-78-JD-MGG

ZAWITOWSKI, et al.,

Defendants.

OPINION AND ORDER

Quincy Isaiah Lunford, a prisoner proceeding without a lawyer, filed this action

under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the

complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief against a defendant who is immune

from such relief. To proceed beyond the pleading stage, a complaint must contain

sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr.

Lunford is proceeding without counsel, the court must give his allegations liberal

construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Lunford is a pretrial detainee at the St. Joseph County Jail. He alleges that on

November 22, 2021, inmates in his housing unit engaged in a "peaceful protest" in the

dayroom because they were upset about not getting the commissary items they had

ordered. In response, Warden Olmstead (first name unknown) directed staff to spray the dayroom with chemical spray. After being sprayed, he immediately began to "lock down" by going in his cell and closing the door. At that point, his face was burning and he was having difficulty breathing. He went to the sink to wash the spray off his face, but discovered that the water had been shut off. He claims an officer told him that this was done at the direction of the Warden and Captain Zawitowksi (first name unknown), the jail's Assistant Warden. It appears the water remained off for about 25 minutes, during which time he claims to have experienced burning and discomfort due to the chemical spray.

Around midnight that night, Officer Swanigan (first name unknown) began to pass out clean towels, sheets, and clothing, but did not give inmates in Mr. Lunford's unit any fresh linens. He claims his towels and clothing were contaminated with chemical spray, but he was not given any clean linens for two days, which in his view was meant to punish the inmates for the incident in the day room. He further claims that on November 22, 2021, and November 23, 2021, his attorney was turned away when trying to visit him because the unit was on lockdown. He was also unable to have contact visits with his mother and sister during this two-day period, even though they had already arranged a visit. He alleges that an unspecified disciplinary charge was brought against him based on the disturbance in the day room, but he was ultimately found "not guilty."

Because Mr. Lunford was a pretrial detainee when these events occurred, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900

F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether a challenged action is objectively unreasonable, courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). "[N]egligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. *Miranda*, 900 F.3d at 353.

To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must allege that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, and the severity of the security problem. *Id.* at 397.

3

Here, Mr. Lunford acknowledges that the inmates in the dayroom were engaging in a "protest." Although he characterizes it as "peaceful," [i]nmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). The court also considers that prison officials are to be afforded substantial deference on matters related to safety and security of the facility. *Bell*, 441 U.S. at 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Given the scenario Mr. Lunford describes, he does not plausibly allege that prison officials violated the Fourteenth Amendment by using chemical spray to disperse the inmates who were protesting in the dayroom.

Nevertheless, the complaint can be read to allege that the disturbance broke up when the chemical spray was employed, but that prison officials continued to punish the participants by shutting off their water and denying them fresh linens for two days. As a result, Mr. Lunford allegedly suffered burning and discomfort to his face and body. Further factual development may show that prison officials acted reasonably to restore order in the facility, but Mr. Lunford has alleged enough to proceed past the pleading stage against Warden Olmstead, Captain Zawitowski, and Officer Swannigan.

Unreasonable restrictions that impede an inmate's ability to speak to his attorney can also violate the Constitution. *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995). For instance, "[t]he Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for [an] entire four-day period" following his arrest.

4

*Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991). Here, Mr. Lunford alleges that his attorney was turned away from visiting him in person for two days because his unit was on lockdown following the protest. This is a very brief period of time, shorter than the period identified in *Tucker* as giving rise to constitutional concerns. There is also no factual content from which to plausibly infer that the jail cut off other means of communication between Mr. Lunford and his attorney, such as phone calls or letters. Additionally, unlike in *Tucker*, Mr. Lunford had not just been arrested. His case was ongoing, and public records reflect that there were no hearings or other proceedings scheduled at the end of November 2021.[1] *See State v. Lunford*, No. 71D03-2101-MR-0002 (St. Joseph Sup. Ct. filed Jan. 7, 2021). The charge against him remains pending, and trial is presently scheduled for June 6, 2022. *Id.* The court cannot plausibly infer that this brief disruption in face-to-face visits between Mr. Lunford and his attorney delayed his case or otherwise prejudiced his Sixth Amendment rights.

He relatedly alleges that he was denied contact visits with his mother and sister during the lockdown. However, the Supreme Court has recognized that contact visits present particular difficulties for correctional facilities and thus can be restricted or prohibited altogether. As the Court explained:

> That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion. . . . Contact visits invite a host of security problems. They open the institution to the introduction of drugs, weapons, and other contraband. Visitors can easily conceal guns, knives, drugs, or other

---

[1] The court is permitted to take judicial notice of public records in determining whether the complaint states a claim. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers. . . .

Contact visitation poses other dangers for a detention facility, as well. Detainees—by definition persons unable to meet bail—often are awaiting trial for serious, violent offenses, and many have prior criminal convictions. Exposure of this type [of] person to others, whether family, friends, or jail administrators, necessarily carries with it risks that the safety of innocent individuals will be jeopardized in various ways. They may, for example, be taken as hostages or become innocent pawns in escape attempts.

*Block v. Rutherford*, 468 U.S. 576, 586-87 (1984).

Here, it is evident that the restriction on contact visits lasted only a few days and was imposed after detainees engaged in a disturbance in the dayroom. Although Mr. Lunford may have been cleared of wrongdoing in connection with the disturbance, he acknowledges that a disturbance occurred. In light of the discretion that must be afforded to prison staff on matters of institutional security, he has not alleged a plausible constitutional claim based on these facts. *See Block*, 468 U.S. at 589 (jail's ban on contact visits was reasonably related to legitimate governmental objective of maintaining internal security); *Martin v. Tyson*, 845 F.2d 1451 (7th Cir. 1988) (jail's policy prohibiting contact visits was not unconstitutional). He may also be claiming that the cancellation of these visits violated jail policy, but a violation of administrative rules or other state law does not give rise to a federal constitutional claim. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door.").

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Warden Olmstead, Captain Zawitowski, and Officer Swannigan (first names unknown) in their personal capacity for money damages for violating his Fourteenth Amendment rights by shutting off the water to prevent him from washing chemical spray off his face and denying him fresh linens between November 22, 2022, and November 24, 2022;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Olmstead, Captain Zawitowski, and Officer Swannigan (first names unknown) and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(4) ORDERS the St. Joseph County Sheriff's Office to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(5) ORDERS Warden Olmstead, Captain Zawitowski, and Officer Swannigan to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 23, 2022

/s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT